**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Milton M Gabaldon, et al., | No. CV-21-00621-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| County of Maricopa, et al., | |
| Defendants. | |

Pending before the Court are Defendants Maricopa County and Deputy Wade Voeltz's ("Defendants") Motions to Dismiss Plaintiffs Milton Gabaldon ("Mr. Gabaldon") and MMDCNG, L.L.C. dba The Tap House Bar & Grill's ("the Bar") (collectively "Plaintiffs") Complaint (Docs. 23; 24).[1]  Plaintiffs filed a Consolidated Response in Opposition (Doc. 28), and Defendants filed corresponding Replies (Docs. 29; 30).[2]

**I.   Background**[3]

This case arises out of Defendants' enforcement of Governor Doug Ducey's

---

[1] Defendants originally asked this Court to stay the matter under the *Younger* abstention doctrine but have since withdrawn this request because the state administrative proceedings are no longer ongoing. (Doc. 33 at 1).  The Court, therefore, will only address Defendants' Motions to Dismiss for failure to state a claim.

[2] Both parties requested oral argument on the matter. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, the Court will deny the requests for oral argument.  *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[3] Unless otherwise noted, these facts are taken from Plaintiffs' Complaint (Doc. 1).  The Court will assume the Complaint's factual allegations are true, as it must in evaluating a motion to dismiss.  *See Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001).

COVID-19 Executive Order No. 2020-09 (the "Order"), which mandated that "all restaurants in counties of the State with confirmed cases of COVID-19 shall close access to on-site dining until further notice. Restaurants may continue serving the public through pick up, delivery, and drive-thru operations." (Doc. 1-2 at 2).

Plaintiff owns The Tap House Bar and Grill in Fountain Hills, Arizona and holds a liquor license issued by the State of Arizona. (*Id.* ¶ 3). During April 2020, Plaintiffs allege the Bar "was a dine-in and take out restaurant, which sold both food and alcoholic beverages to its customers." (*Id.* at ¶¶ 7, 10). Plaintiffs also allege that the Bar was "closed to in-person and on-site dining, and [was] only selling food and beverage on a to-go basis." (*Id.* at ¶ 8).

In accordance with Governor Ducey's Order, Plaintiffs allege that the Maricopa County Sheriff's Office ("MCSO") "created or adopted a custom, policy and/or practice of investigating and enforc[ing] the Executive Orders of Governor Doug Ducey, including but not limited to Executive Order No. 2020-09." (*Id.* at ¶ 9). Part of that "custom, policy and/or practice," Plaintiffs claim, "included notifying the State of Arizona Department of Liquor Licenses and Control of what MCSO believed to be a violation of Executive Order 2020-09." (*Id.* at ¶¶ 9, 19). During April of 2020, Plaintiffs allege that under the policy, Deputy Voeltz, "conducted on-site investigations into alleged violations by Plaintiffs" and, based on those investigations, Deputy Voeltz reported violations of Governor Ducey's Order, and alleged violations of A.R.S. § 4-210(A)(2) and A.R.S. § 4-210(A)(10). (*Id.* at ¶¶ 10–11).

Two months later, on June 23, 2020, Mr. Gabaldon claims the Arizona Liquor Department ("the Department") notified him that he and the Bar had violated A.R.S. § 4-210(A)(2) and A.R.S. § 4-210(A)(10), that those violations carry "monetary penalties of $3,500.00," and that "[f]ollowing notice and a hearing, [the Department] has the authority to suspend, revoke or to refuse renewal of such liquor license." (*Id.* at ¶ 13).[4]

---

[4] The Complaint contains no allegations that Plaintiffs have been subject to those monetary penalties or that the Bar's license has been suspended, revoked, or denied renewal. In fact, the Department issued only a warning. (Doc. 33-1 at 2). The Court notes Defendants filed the Department's warning letter (Doc. 33-1), but the record is available on the Arizona

Plaintiffs contested those allegations as false and unsupported by evidence. (*Id.* at ¶ 14). Thereafter, on April 10, 2021, Plaintiffs filed their Complaint, alleging Deputy Voeltz (1) entered a closed business in the absence of a warrant, without consent, and without any exceptions that would have allowed him to enter the premises, (2) that he submitted findings to the Department which he knew or should have known were false and that these false findings resulted in the issuance of the alleged violations of the Department statutes, and (3) that he did not equally investigate and apply Governor Ducey's Orders during the COVID pandemic. (*Id.* at ¶ 21.C, D, E).

The Complaint alleges various violations under the Arizona Constitution, Arizona Statutes, and the U.S. Constitution. Count I, the only Count, alleges the County's policy and Deputy Voeltz's investigation and subsequent notification to the Department violated Plaintiffs' civil rights. (*Id.* at ¶¶ 17–20). Specifically, Plaintiffs allege violations of Article II § 4 (due process), § 8 (privacy), and § 13 (equal protection) of the Arizona Constitution and the Fourth and Fourteenth Amendments of the U.S. Constitution. (*Id.* at ¶ 20.A, B, D). Plaintiffs also assert that Deputy Voeltz improperly conducted his investigation of Plaintiffs under A.R.S. § 26-317 because that statute does "not apply to private businesses or its members." (*Id.* at ¶ 21.B)."

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). (Docs. 23; 24).

## II.   Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the pleader is entitled to relief for its claims. Fed. R. Civ. P. 8(a)(2). This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There

---

Department of Liquor's website. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (holding that under Fed. R. Evid. 201 a court may take judicial notice of "matters of public record") (citation omitted).

must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not generally require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555. A complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In addition, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim can be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a motion to dismiss, "all factual allegations set forth in the complaint 'are taken as true and construed in the light most favorable to the plaintiffs.'" *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001) (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**III.  Discussion**

Defendants argue Plaintiffs' federal and state law claims fail to state a claim. (Docs. 23; 24). Defendants also move the Court to, dismiss with prejudice, the claims against Deputy Voeltz, in their entirety, pursuant to Rules 8(a)(2) and 12(b)(6). (Doc. 30 at 2). The Court will address each argument in turn.

**A. State and Federal Claims**

Plaintiffs bring both state and federal claims against Maricopa County ("County") and Deputy Voeltz.

**i.  State Law Claims Against Maricopa County**

Defendants argue the County is not vicariously liable for the actions of the Maricopa

County Sheriff or his deputies. (Doc. 23 at 12). Defendants therefore contend that as a matter of law, the County does not have any state law liability for Deputy Voeltz's alleged conduct. (*Id.*) Plaintiffs did not respond to this argument. (Doc. 28 at 22–28).

It is well established that a "County, having no right of control over the Sheriff or his deputies [], is not liable under the doctrine of Respondeat superior for the Sheriff's torts." *Fridena v. Maricopa Cnty.*, 504 P.2d 58, 61 (Ariz. Ct. App. 1972). In 2010, Arizona courts determined that the MCSO was a non-jural entity and lacked capacity to be sued. *Braillard v. Maricopa Cnty.*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010). The Ninth Circuit then substituted Maricopa County for MCSO in *Melendres v. Arpaio*, 784 F.3d 1254, 1260 (9th Cir. 2015).

Several federal courts in this district have found *Fridena* bars state-law claims against the County based on respondeat superior for torts allegedly committed by the employees of the Sheriff's Office. *See Norton v. Arpaio*, 2015 WL 13759956, at *6 (D. Ariz. Nov. 20, 2015) (holding under *Fridena* all state-law claims against Maricopa County are dismissed); *Kloberdanz v. Arpaio*, 2014 WL 309078, at *5 (D. Ariz. Jan. 28, 2014) (same); *Nevels v. Maricopa Cty.*, 2012 WL 1623217, at *4 (D. Ariz. May 9, 2012) (same). This Court will follow suit. Plaintiffs do not raise any allegations of direct liability against the County. Instead, Plaintiffs argue the County is liable for the alleged actions of Deputy Voeltz when he investigated the Bar. (Doc. 1 at ¶ 19). Therefore, the Court will dismiss all the state-law claims against the County.

### ii. Federal Law Claims Against Maricopa County

Defendants argue Plaintiffs fail to state a federal claim under *Monell*. A local governmental unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011); *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691 (1978). A plaintiff must go beyond the respondeat superior theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit, because municipal liability must rest on the actions of the municipality,

and not the actions of the municipality's employees. *Id.* To establish liability under *Monell*, a plaintiff must show that (1) he was deprived a constitutional right; (2) the governmental unit had a policy; (3) the policy amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1111 (9th Cir. 2001).

Defendants argue Plaintiffs' *Monell* claim fails because Plaintiffs do not show a policy, practice, or custom attributable to the County. (Doc. 23 at 8). Defendants further contend Plaintiffs' allegations about Deputy Voeltz's allegedly falsified reports and unlawful investigatory techniques amount to a "sporadic incident" for which the County cannot be held liable. (*Id.* at 9).

In their Response, Plaintiffs argue the County adopted a policy or practice of investigating and enforcing Governor Ducey's Order and that this policy or practice was unconstitutional because (1) the County's enforcement of the Order exceeded the boundaries of A.R.S. § 26-317, and (2) the Order enacted different restrictions on businesses based on their type. (Doc. 28 at 23).

The Court rejects the County's argument that Plaintiffs have failed to identify a policy or custom to support liability under *Monell*. (Doc. 23 at 8). Plaintiffs brought federal claims against the County based on the County's policy and practice of investigating certain businesses pursuant to Governor Ducey's Order. (Doc. 1 ¶ 19). Plaintiffs provided the report prepared by Deputy Voeltz, wherein he notes Plaintiffs' violation of the Order. (Doc. 1-4 at 1–3). The Court finds this sufficient to support the claim that a policy existed.[5]

---

[5] Plaintiffs also argue the Order does not apply to them because they are neither "a private organization or member thereof" and are therefore exempt from the Order. (Doc. 1 at ¶ 21.A). The phrase "a private organization or member thereof" is part of A.R.S. § 26-317. By statute, "the law enforcing authorities of the state and political subdivisions" are tasked with enforcing violations of § 26-317. *See* A.R.S. § 26-316. § 26-317 states "[a]ny person who violates any provision of this chapter or who knowingly fails or refuses to obey any lawful order or regulation issued as provided in this chapter shall be guilty of a class 1 misdemeanor. This provision does not apply to the refusal of any private organization or member thereof to participate in a local emergency or state of emergency as defined by this chapter." A.R.S. § 26-317. The applicability of this statute to Plaintiffs is not a justiciable

Even so, the Court must still consider whether a constitutional deprivation is adequately pleaded. Again, Plaintiffs allege violations of Article II § 4 (due process), § 8 (privacy), and § 13 (equal protection) of the Arizona Constitution and the Fourth and Fourteenth Amendments of the U.S. Constitution.

### iii. Due Process Claims against the County and Deputy Voeltz

In their Complaint, Plaintiffs allege that Deputy Voeltz "intentionally submitted false findings to the Arizona Liquor Department for prosecution which he knew or should have known were false, and such false findings resulted in the issuance of alleged violations of Arizona Liquor Department statutes which claims remain pending and have thus interfered with Plaintiff's property rights." (Doc. 1 at ¶ 21.C). Defendants argue that because the State's administrative proceedings provide Plaintiffs with adequate procedural protections, Plaintiffs have not alleged a viable due process claim. (Doc. 23 at 11).

Both the Fourteenth Amendment and Article 2, Section 4 of Arizona's Constitution provide that "no person may be deprived of life, liberty, or property 'without due process of law.'" *Coleman v. City of Mesa*, 284 P.3d 863, 872 (Ariz. 2012). Due process challenges may be procedural or substantive.[6] *See Vong v. Aune*, 328 P.3d 1057, 1061 (Ariz. Ct. App. 2014).[7] A procedural due process claim has two elements: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of

---

issue before the Court: Plaintiffs' Complaint contains no allegations that they were charged with a crime under A.R.S. § 26-317. Nor do Plaintiffs allege that the County requested their help in the local emergency and that they refused to participate. Plaintiffs argued for the first time in their Response that "[t]he Executive Order itself discriminates between types of businesses" and "applies differently, or not at all, to some businesses." (Doc. 28 at 23). But, as the County points out, Plaintiffs cannot convert their as-applied claim against the County into a facial challenge to the legality of Governor Ducey's Order in a subsequent pleading document. *See Jimenez v. Progressive Cas. Ins. Co.*, 2016 WL 11602906, at *3 (D. Ariz. Jan. 12, 2016) (finding plaintiff cannot assert new legal theories of relief not alleged in the first complaint in response to motions to dismiss).

[6] The Court notes Plaintiffs' Complaint fails to specify whether they bring a substantive or procedural due process claim. (Doc. 1 at ¶ 21.C). Regardless of their theory, both arguments fail.

[7] Given the similarity in the due process clauses, the Court will consider Plaintiffs' state and federal due process claims together. *Vong*, 328 P.3d at 1061 (considering plaintiff's "state and federal due process claims together because the respective due process clauses 'contain nearly identical language and protect the same interests'").

adequate procedural protections." *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1224 (9th Cir. 2021). The touchstone of procedural due process is "notice and an opportunity to be heard." *Id.* at 1225 (citation omitted).

Plaintiffs' state and federal due process claims against the County and Deputy Voeltz fail because the Department did not deprive Plaintiffs of their liquor license and Plaintiffs have been afforded both notice and an opportunity to be heard for their alleged violations. Here, Plaintiffs allege that Deputy Voeltz's false findings to the Department interfered with Plaintiff's property rights. (*Id.*, ¶ 21.C). Plaintiffs do not elaborate on how the Department interfered, or how the administrative proceedings they were afforded did not provide them an opportunity to contest the allegations.[8] Moreover, from the record, it is clear the Department took no action against Plaintiffs' liquor license. (Doc. 33-1 at 2). Instead, on October 12, 2021, the Department sent a letter to Plaintiffs, informing them the Department would issue a warning in their case. (*Id.*)

Even assuming the truth of Plaintiffs' allegation that Deputy Voeltz' statements in his investigative report were false, the Ninth Circuit has held that where a police officer is presumed to have testified falsely during an administrative proceeding, post-deprivation remedies satisfy procedural due process requirements. *See Miranda v. City of Casa Grande*, 15 F.4th 1219, 1221 (9th Cir. 2021). The administrative proceedings here have concluded, and Plaintiffs do not contest that they did not have notice or an opportunity for a fair hearing. *See Goss v. Lopez*, 419 U.S. 565, 579 (1975) ("[t]he fundamental requisite of due process of law is the opportunity to be heard."). Moreover, the Department did not collect a civil penalty or impose a suspension of Plaintiffs' liquor license. (Doc. 33-1 at 2). The Court finds Plaintiffs have not alleged a constitutional deprivation under either the

---

[8] A.R.S. § 4-210(A) governs the administrative proceedings available to a licensee that has allegedly violated Arizona's state's liquor laws. "After notice and hearing, the director may suspend, revoke or refuse to renew any license issued pursuant to this chapter for any of the" enumerated violations. A.R.S. § 4-210(A).

The licensee may appeal the director's decision to the Arizona State Board of Liquor ("Board"). A.R.S. § 4-210.01(A). The Board must conduct a hearing, and it may affirm, reverse, or modify any decision issued by the director. A.R.S. § 4-210.02(D). Final decisions of the board are subject to judicial review. A.R.S. § 4-211(A).

- 8 -

state or federal due process clause and therefore Plaintiffs fail to state a claim upon which relief can be granted.

### iv. Search and Seizure Claims

Plaintiffs allege that Deputy Voeltz "entered a closed business in the absence of a warrant, without consent, and without any exceptions that would have allowed him to enter the premises." (Doc. 1 at ¶ 21.D). Defendants contend Plaintiffs have no viable unlawful search claim because (1) the Bar was open to to-go customers during the time periods at issue, (2) the legislative scheme under A.R.S. § 4-118 authorized Deputy Voeltz's entry into the Bar during its business hours for the purpose of inspecting and enforcing the provisions of A.R.S. § 4-118 without a warrant or consent, and (3) that the U.S. Supreme Court has expressly recognized the administrative search exception to the warrant requirement in situations such as those provided for in A.R.S. § 4-118. (Doc. 30 at 2).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Fourth Amendment was designed to protect individuals against "arbitrary invasions by governmental officials." *State v. Mixton*, 478 P.3d 1227, 1231 (Ariz. 2021) (citation omitted). The Arizona Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Ariz. Const. art. 2, § 8 ("Arizona Private Affairs Clause").

Under Arizona law, "[t]he director, the director's agents and any peace officer may, in enforcing the provisions of this title, visit during the hours in which the premises are occupied and inspect the premises of a licensee." *See* A.R.S. § 4-118. Similar to the due process claims, the Court will consider the state and federal search and seizure claims together. *See Mixton*, 478 P.3d at 1235 (finding Arizona's Private Affairs Clause "is of the same general effect and purpose as the Fourth Amendment . . . .").

Plaintiffs' state and federal search and seizure claims against the County and Deputy Voeltz fail because the premises was open for to-go orders and Deputy Voeltz had the authority to enter. Here, Plaintiffs allege that "[Deputy] Voeltz entered a closed business

in the absence of a warrant, without consent, and without any exceptions that would have allowed him to enter the premises." (Doc. 1 at ¶ 21.D). Plaintiffs' Complaint, and the affidavits attached, tell otherwise. (*Id.* at ¶ 7). The Complaint states the Bar was open and "selling food on a to-go basis." (*Id.* ¶ 8). An affidavit from Ms. Woolbright indicates she was inside drinking a beer while she waited for her husband to reconfigure an existing cable television system for the Bar. (Doc. 1-6 at ¶ 5). Because the premises was occupied and open for to-go orders, Deputy Voeltz had the power under A.R.S. § 4-118 to inspect the bar without a warrant.

Plaintiffs cite language from *Colonnade Catering Corp. v. United States* to support their contention that Deputy Voeltz's entry upon the Bar's premises fell outside the Fourth Amendment's administrative search exception to the warrant requirement. 397 U.S. 72, 77 (1970). In *Colonnade*, federal agents broke a lock and entered a cellar when the owner refused to open the storeroom because the agents did not have a warrant. Unlike the locked liquor storeroom in *Colonnade*, Plaintiffs' restaurant was open for to-go orders. (Doc. 1 at ¶¶ 7–8). Deputy Voeltz did not break into the restaurant or enter a closed establishment. To the contrary, he entered the Bar just as a normal patron who ordered something to-go would have.

A.R.S. § 4-118 explicitly authorized Deputy Voeltz to enter onto the premises to investigate compliance with Governor Ducey's Order. Plaintiffs nonetheless argue Deputy Voeltz's investigation was "so random, infrequent, or unpredictable" that Plaintiffs had no expectation the Bar would be inspected by government officials. (Doc. 28 at 26). Plaintiffs cite *Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978) and *Donovan v. Dewey*, 452 U.S. 594 (1980) to support this proposition. (*Id.*) However, neither *Marshall* nor *Donovan* applies here. In *Marshall*, the Court held warrantless inspections under the Occupational Safety and Health Act ("OSHA") were unconstitutional. *Marshall*, 436 U.S. at 324. In so holding, the Court contrasted warrantless searches under the intensely regulated liquor and firearm industries from warrantless searches under OSHA. The Court pronounced, "Certain industries have such a history of government oversight that no reasonable expectation of

privacy, could exist for a proprietor over the stock of such an enterprise. Liquor and firearms are industries of this type; when an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of government regulation." *Marshall*, 436 U.S. at 313 (citation omitted).

In *Donovan*, the Court cited *Marshall* for the proposition that "warrantless inspections of commercial property may be constitutionally objectionable if their occurrence is so random, infrequent, or unpredictable that the owner, for all practical purposes, has no real expectation that his property will from time to time be inspected by government officials." *Donovan*, 452 U.S. at 599. However, as discussed, the warrantless search in *Marshall* is wholly different from the warrantless search here. Plaintiffs' Complaint contains no allegations that this search was random, infrequent, or unpredictable.[9] The Court further rejects Plaintiffs' contention that administrative immunity "is a question of fact to be evaluated during discovery." (Doc. 28 at 25–26). Issues of governmental immunity are generally questions of law for the Court to decide. *See Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017) (finding qualified immunity is a question of law, not a question of fact); *U.S. ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1144 (9th Cir. 2004) (finding the existence of sovereign immunity is a question of law); *Chamberlain v. Mathis*, 729 P.2d 905, 908 (Ariz. 1986) (finding scope of immunity is a legal question for the court). Plaintiffs fail to elaborate on their argument and provide no authority to support it.

For these reasons, the Court finds Plaintiffs have not alleged a constitutional deprivation under either the Arizona State Constitution's Privacy Clause or the U.S. Constitution's Fourth Amendment and therefore Plaintiffs fail to state a claim upon which relief can be granted.

---

[9] The Court notes Plaintiffs argue in their Response that "within days of the issuance of [the] Order, MCSO and its officers began random and unpredictable inspections/investigations of Plaintiffs' business." (Doc. 28 at 25). Nowhere in the Complaint, however, did Plaintiffs raise this allegation. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.").

### v. Equal Protection Claims

Plaintiffs allege "MCSO [the County] did not equally investigate and apply Governor Ducey's Executive Orders during the COVID pandemic." (Doc. 1 ¶ 21.E). Defendants contend Plaintiffs' equal protection claims fail because (1) there is no allegation that Deputy Voeltz acted with intent or purpose to discriminate against Plaintiffs; (2) there is no allegation that Plaintiffs are in a protected class; and (3) there is no allegation that Deputy Voeltz treated Plaintiffs differently. (Doc. 24 at 10).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Serrano v. Francis*, 345 F.3d 1071, 1081 (9th Cir. 2003) (citation omitted). Article 2, Section 13 of Arizona's Constitution provides "[n]o law shall be enacted granting to any citizen . . . privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations." *Coleman*, 284 P.3d at 872.

To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class. *Id.* Like the previous two claims, the Court will consider the state and federal equal protection claims together. *See Coleman v. City of Mesa*, 284 P.3d 863, 872 (Ariz. 2012) (construing Article 2, Section 13 of Arizona's Constitution "as applying the same standard as applies to equal protection claims under the federal constitution").

Plaintiffs' state and federal equal protection claims against the County and Deputy Voeltz fail because Plaintiffs do not show Deputy Voeltz acted with intent or purpose to discriminate against Plaintiffs or that Deputy Voeltz treated Plaintiffs differently as compared to others who are similarly situated. Here, Plaintiffs allege that "MSCO did not equally investigate and apply Governor Ducey's Executive Orders during the COVID pandemic." (Doc. 1 at ¶ 21.E). Plaintiffs do not provide further factual allegations in their Complaint. (*Id.*) Even viewing this allegation in the light most favorable to Plaintiffs, the

Complaint mentions no allegations that Deputy Voeltz acted with intent or purpose to discriminate against Plaintiffs, that Plaintiffs are in a protected class, or that Deputy Voeltz treated Plaintiffs differently than others who are similarly situated. (*Id.*) Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *See Iqbal*, 556 U.S. at 678. Granted, Plaintiffs did, for the first time, argue in their Response that "[t]he Executive Order itself discriminates between types of businesses" and "applies differently, or not at all, to some businesses." (Doc. 28 at 23). A bar, however, is not a protected class. Plaintiffs also cannot informally amend their Complaint by asserting new allegations not found in the original Complaint in subsequent motions. *See Pryzblyski v. Stumpf*, 2011 WL 31194, at *4 (D. Ariz. Jan. 5, 2011) ("Plaintiff cannot informally 'amend' the complaint by attempting to supplement his allegations in later motions, or responses thereto.")

Thus, the Court finds Plaintiffs have not alleged a constitutional deprivation under either the state or federal equal protection clause and therefore Plaintiffs fail to state a claim upon which relief can be granted.

## IV.   Leave to Amend

In accordance with the well settled law in this Circuit, because "it is not 'absolutely clear' that [Plaintiffs] could not cure [the Complaint's] deficiencies by amendment," the Court will grant them the opportunity to do so. *See Jackson v. Barnes*, 749 F.3d 755, 767 (9th Cir. 2014) (citations omitted); *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000); Fed. R. Civ. P. 15(a)(2) (stating that leave to amend should be "freely" given "when justice so requires"). Because it is unclear to the Court whether an amendment would be futile here, the Court will grant Plaintiffs with leave to file a First Amended Complaint within **fourteen (14) days** from the date of entry of this Order**.**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Maricopa County and Deputy Wade Voeltz's Motions to Dismiss (Docs. 23, 24) are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Complaint (Doc. 1) is **DISMISSED**

**without prejudice** with leave to file a First Amended Complaint within **fourteen (14) days** from the date of entry of this Order**.**

**IT IS FINALLY ORDERED** that if Plaintiffs fail to file an Amended Complaint within **fourteen (14) days** from the date of entry of this Order, the Clerk of Court shall kindly terminate this matter without further Order from the Court.

Dated this 2nd day of February, 2022.

Honorable Diane J. Humetewa
United States District Judge